Thank you. Good morning, Your Honors. There are three mistakes that the Board made here that should have resulted in the Board having overturned the examiner's rejections. First, the Board failed to construe the creating a communication channel limitation of the claims, offered no construction of that at all, yet found the prior art not to anticipate that limitation. The Board failed, second mistake, the Board failed to account for the fact that IP addresses are ordinarily dynamic, that's right from the patent, the patentee admitted that, so the Crichton references necessarily should be interpreted to disclose dynamic IP addresses. And third, the Board improperly and expressly disregarded this court's construction of the claim term location facility in the same patent that is at issue here in another case, the 01 Communique against LogMeIn case, against LogMeIn. Turning to the creating a communication channel. Can I just start you with that last point? Sure. I mean, I guess it's kind of hard for me to get my arms around what it is you're advocating here in terms of a process. So you said they should have, the Board should have, was compelled to consider a new ground of rejection based on the recent updated Federal Circuit construction? Citrix raised the LogMeIn issue at its first opportunity. The LogMeIn decision from this court published about two years after Citrix filed its opening brief before the Board. And is it your view that the Board then was compelled to adopt that? Yes, the Board certainly was compelled to adopt this court's construction of a claim term at issue and should have given the parties an opportunity to address it. The Board made the mistake of saying this is a new grounds and we're not free to consider it. Well, first of all, Citrix could never have raised it before. Why could Citrix not have raised it before? They certainly could have raised the argument which was raised in the LogMeIn appeal. Oh, they could have said that the construction should have been, the construction ought to have been given by this court, but I take it Citrix did not make that argument at any point earlier than after. That specific argument, that's correct, Your Honor. And why isn't that raised? Because with respect to, Citrix makes decisions, all litigants make decisions about how efficiently to present their case. That issue wasn't really in play that much. Right. They thought that wasn't necessarily a winner, so they didn't raise it. But once having made that decision, why aren't they stuck with it? Because once this court issues a decision and finds that the claim term locator-server in this patent means this, and the world is bound by that. The Federal Circuit has decided, and no appeal to the Supreme Court, that this issued United States patent, this claim term, this is what it means. But if you didn't raise the question as to where the pertinence of that claim construction would be important, then that issue isn't in the case. Well, we didn't have the benefit of knowing what the Federal Circuit ruling would be, Your Honor. That brings me back to my point that you had the opportunity to make exactly the same argument that was made by the winning party in the Federal Circuit case, but you didn't. Right? The issues as they cultivated up to the board here, they just percolated differently, Your Honor. I understand. Right. But once that decision, the board made the decision, we can't hear that. What it should have done was, it should have sent it back and given the parties... Was there any suggestion during the examination that this broader claim construction that's in our case wasn't the claim construction that was going to be relied on? In other words, that was inartfully phrased, but you say that wasn't an issue, but was it not an issue because you weren't raising it, or because the other side wasn't arguing for a more limited construction? I have to say, Your Honor, my recollection is that particular issue in this litigation wasn't pressed that hard, whether the locator server... It certainly wasn't pressed in the re-examination, I should say. Sometimes I get confused, Your Honor. So in this re-examination, the question whether the locator server might comprise more than one computer and whether the location facility might be distributed among more than one computer wasn't a significant issue in this re-examination. So when you were arguing about the records, was there no argument about why it wasn't or was valid because it went across more than one computer? Well, Citrix certainly takes the view, Your Honor, that the patents are invalid because that's not required. Well, the issue crystallizes in this manner. When you get back to the creating a communication channel limitation, the board never construed that limitation. The parties have had a disagreement about the construction of that limitation. And a fundamental error the board made here is it still hasn't construed the limitation. Citrix's view of what it means to create a communication channel is the locator server induces the channel by providing information to the remote requesting device. That's the first example given in the patent about how it could work. 01 Communique has taken a different view. They've taken the view that the communication channel has to go through the locator server. Well, if the locator server can comprise more than one computer, it joins the issue of the Federal Circuit's claim construction from the Log Me In decision. The net meeting references specifically describe a communication channel that passes through a proxy server. In that case, I think, Your Honor, it's called remote passage, a proxy server. Well, even if the board had had the opportunity to hear argument from the parties based on the law, what does it mean to be a locator server as this court has held, Citrix has the opportunity to say, under net meeting, therefore, the communication goes through the proxy server. There's no dispute about that. Under the Federal Circuit construction from Log Me In, a locator server can be more than one computer. That meets even 01 Communique's argument about what it means to create a communication channel, that the communication has to go through the locator server. So it's highly relevant in that regard. And the issue doesn't crystallize until this court makes its ruling in the Log Me In case. And the board should have given the parties the opportunity to make arguments based on that. And it doesn't make sense to have inconsistent decisions. We've got a Federal Circuit ruling. What is a locator server in the 479 patent? The board was not free to ignore that decision. And the timing of it should have resulted in the board giving the parties an opportunity to brief the issue, not to say, we're going to pretend that issue never happened. So the board didn't say we had waived it. They simply said it's too late. It's new evidence. So with regard to creating a communication channel limitation itself, the board failed to construe the limitation, yet that's the sole limitation that the board found to be omitted from the net meeting et al. references. O-1 agrees, page 2 of its brief, the red brief, that the board did not explicitly provide a definition for the creating limitation in its decision. O-1 goes on to argue, Your Honors, that the board does not have to construe every term and every claim. And that's certainly true. And Citrix hasn't argued that the board had to do that. But the board certainly had an obligation to construe the one claim limitation that it was going to found to be omitted from the prior art improperly and correctly, in our view, and inform the parties what its claim construction was. And therefore, as it looked to the prior art, how it was reaching the conclusion that the prior art does not disclose that claim limitation. But we don't have a claim construction from the board of what it means to create a communication channel. Had the board given that claim term its broadest reasonable interpretation, the broadest reasonable interpretation of creating a communication channel certainly should encompass all of the embodiments for doing that disclosed in the patent. It would have found the claims invalid, unpatentable, in view of the net meeting et al. references. The first disclosed embodiment, the 479 patent, column 7, at line 54, toward the end of that paragraph, the patent says server computer 12 is engaged to allow a connection to be set up between the requesting device and the private server. So we have right out of the patent specification a very passive description of the role that the locator server plays. It's engaged to allow a connection to be set up between the requesting device and the private server. The patent goes on in the paragraph that begins immediately following, and I'm at the bottom of column 7 of the 479 patent, to describe a first embodiment for this happening. And it describes that a direct connection can be provided using a secure web protocol in a manner that is well known. That's all it says, in a manner that is well known. It goes on to say in this method, once the server computer 12 has validated the connection request providing the requesting device 30, the requesting device 30 is simply forwarded to the private server 14 in a manner that is well known. That's all the patent tells us. It is done in a manner that is well known. What is your understanding what validation means in this context? I think that simply that the user is registered and that there is a personal computer that in fact it can connect to. So if your honor, if I were trying remotely to connect to a computer here in the courthouse, the request would be validated by making sure I have an account and that the computer I'm trying to connect to, I actually have authority to connect to that computer. There wouldn't be a step, for example, that would be performed just by a look-up table of addresses. That would be a part of it, I think, your honor. A look-up table? I mean, it certainly could be to make sure. It could be. You could have the look-up table do any number of different things, but it would no longer be a simple look-up table. Perhaps I don't understand your question. Well, in other words, if all you've got is a directory of addresses and you're asking the directory, give me the address for the court, you're not doing validation, correct? No, I think that's right, your honor. The validation would mean it's a computer that I actually have authority, I'm permitted to go and connect to. And so 12 performs that task in addition to giving you the address. 12 being the locator server? Yes. Yes, it does. So, in any event, what the first embodiment describes is the locator server is engaged to permit the direct communication from the remote requesting device to the personal computer. All it says is it's done in a manner that is well-known. The only manners that are well-known, that are of record in this matter, are those that are described in the prior art record. The net meeting reference, the net meeting category of references. So, it certainly, without having a construction from the board of what it means to make that connection, to create that communication channel, we're left just to speculate about how the board reached its conclusion. There's discussion in the red brief about something that 01Communicate coins an HTTP forwarding operation, but there's simply no evidence in the record whatsoever of what that is. And the citations included in the brief that go back to the record are just citations to more attorney argument. The only manners that are well-known for making that connection are those that are described in the net meeting at all family of reference. The reference to HTTPS would certainly be well-known. Certainly, that's right. So, that isn't ambiguous, right? No, that's right, and I don't think we're disputing that. How is the connection made? How is the connection made? And the connection is made in the 479 patent in the exact same manner that the connection is made in the manner, in the way that net meeting and ILS collaborate with one another. Thank you. Please report. Good morning, Your Honor, or I'm not sure it might be good afternoon at this point. With respect to both sets of prior references that are being raised in this appeal, the determinations by the board that are being appealed were factual determinations. So, those determinations are supported by substantial evidence in the record,  Can you begin where your friend began, which is talking about what the board was required to do once the Federal Circuit came up with the claim construction? Absolutely, Your Honor. With respect to the argument that Citrix raised, they did raise the argument of the Federal Circuit decision in the Logmean appeal to the board. The board found in its decision that that argument was improperly raised. It was raised for the first time, citing the Rambis case. But then... But that Rambis case doesn't stand for the purpose which the board relied on it, right? Rambis just says that if the board does find a new ground of rejection, they have to give the patentee the opportunity to respond. So, I wasn't quite clear on what there was in Rambis that compelled the board to do what it did here. Can you help me on that? And what I was going to go on to say is, Your Honor, is that although they found that, they go on in the decision to find, but it doesn't matter. Because even applying the decision from the Logmean appeal, the Crichton references, which was the argument that Citrix raised in the appeal to the board, the Crichton references still don't disclose the dynamic IP addresses, which is what the board found was required. They found that the inherency argument was improper or incorrect, and so they found that the references still don't disclose the dynamic IP addresses, and therefore, it doesn't teach what's in the patent in any event. And so, I think here what we had was a purely factual determination by the board that the Crichton references, irrespective of what was said in the Logmean case, the Logmean decision does not apply. Citrix did not raise this issue that it's raising for the first time now in this appeal, which is, do the net meeting references? I thought the relevance of our Logmean decision wasn't to the Crichton reference, it was to the net meeting reference. The relevance with respect to it, and that is the argument that they're raising on appeal here, is does the Logmean argument apply to the net meeting references at the board, and that was not the argument that they raised. They raised, does the Logmean decision apply to the Crichton references? And so, now we have two levels of a brand new argument raised for the first time on appeal. It was raised for the first time on appeal to the board, and now it's being raised for the first time on appeal. A different argument is being raised for the first time on appeal to this court. Could you talk about it in the context of the net meeting? No, because I'm a little, I don't think the board's analysis of why you're going to look at this decision is necessarily correct. So if they actually had raised the net meeting reference, I wonder why it isn't relevant towards that issue. Well, the decision of the board, I think, is very clear on why they decided that the net meeting references do not teach what's in the patent. They relied on two concessions by Citrix. The first concession was in Citrix's appeal brief, and this is not in the record, it's one of the pages from their opening appeal brief to the board, not in the record, but in the section of their appeal brief to the board, titled Summary of the Claims Subject Matter. They make the concession, which the board specifically cites on page A-22 of the record. And I'll read the entire thing. They just cite the end portion of it, but they say, Thus, O-1's patent claims are limited to specific embodiments of just three computer architecture comprising, one, a personal computer, two, a remote computer, and three, and this is the important one, a locator server computer that acts as the man in the middle to locate the personal computer and create a communication channel between the personal and remote computers. And so what they found is the Citrix conceded in the patent, the locator server has to create the communication channel. What they also then go on, what they find actually on page 21 and on page 22, is that in the net meeting references, Citrix conceded that in those references, it's the remote computer that creates the communication channel. And that doesn't change whether you apply the log me in, the first log me in one decision in this appeal. In that decision, the board does find that the locator server can be distributed, but here there's nothing that they can distribute to which would be considered the locator server. In the patent claims, there are actually four components. Generally, it's only spoken about in terms of three because the three primary ones that come up is the personal computer, the remote computer, and the locator server, but there's a fourth component. And the fourth component is the internet gateway. And that's specifically recited in the claims. And what they point to as being the locator server is actually part of the internet gateway. And so that's a separate component of the claim which is not the locator server. And so the board was exactly correct. And this is something that was presented below. It was presented during the reexamination to the examiner that this was an argument that was made that the phone patch is part, phone patch and remote passage, which basically operate the same way, are part of the gateway. And the gateway is not the locator server. That's a separate component of the claims. And so therefore, the argument that Citrix makes doesn't apply to this log me in decision, which is why they raise it to the board only with respect to Crichton because it doesn't apply to NetMeeting. Could you address the material between column 7, line 62, and column 8, line 18 and the arguments that are made that those embodiments are really no different from what NetMeeting does? They are different from what NetMeeting does. There's the two embodiments. There's what I would call the direct embodiment and the indirect embodiment. Sometimes they're referred to as the first and second, but of course there's other things in the specification before that. So I'll refer to them as the direct and the indirect. Okay, what does the server computer 12 do in the first embodiment that's different from what NetMeeting does? One of the NetMeeting ancillary systems. Yes, in the direct embodiment, what I'll call it, the server computer, as it says there, it points to the HTTPS and it talks about forwarding and not withstanding Mr. Klein's argument, HTT forwarding and HTT redirect are synonymous there. If you look, if you do any searching on the Internet, you'll see that those are synonymous terms. And an HTTP redirect is a specific function. HTTP forward is a specific function. And this is forwarding and this is redirect is what you're saying and therefore there is not simply a provision of a new address, but it becomes, it's tunneled all the way through from the first computer to the last, to the recipient. It's not tunneled through. This is another argument that Citrix raises again and again. It says it has to go through it. And 0-1 argued it has to go through the locator server. We never argued it has to go through the locator server. The locator server has to create the communication. When I say tunneled through, I mean they, so they actually create the connection as opposed to providing the address that allows the creation by another entity of the connection. Correct. That's your distinction, right? Correct. And in the first embodiment, I've used this as an analogy, the operator, the first embodiment, or what Citrix is arguing, and the NetMeeting references, operates like you call the operator and say, please give me the phone number for Judge Bryson. And they give you that phone number, and now you can go and make a phone call to Judge Bryson, or you can ignore that, you can take that information, put it in your pocket and do nothing with it. You can decide what you do with that information. That's what NetMeeting does. It's the ILS server. It's a server out there. You go to, you say, give me the information for this particular, for a particular device by name. It gives you the number you can contact. That's all that NetMeeting does. In the HTTP forward, that's more like I call the operator and say, please connect me with Judge Bryson. And now the operator does that. And whether the operator does that by connecting directly through the operator system or connecting me by somehow getting my phone to contact your phone directly, either one of those, the operator in that instance, is doing more than simply providing the information. What about the proxy? Proxy is when, proxy would be the example of, as you were referring to, where it's going through. So both embodiments are disclosed here. One of the embodiments is where the locator server, you contact the operator and the operator connects you directly through them. You don't have to, it doesn't send a message back. And that's what the forwarding does. It sends a message back to your computer that compels your computer to contact another one. Well, how does proxy fit into that? Proxy is, I don't send a command back to your computer to connect to, for instance, Judge Hughes' computer. What I do is I simply connect you through a piece of software that I've got that just connects you. Now, how about the static versus dynamic? And let me ask the question this way. What is it in the patent that actually solves the problem of dynamic addresses? How do you solve the problem that Crichton does not? In the patent, there's an entire section describing an embodiment in which the information, I get the IP address, I store the information, I being the locator server store the information, and then when someone wants to access the computer that I've got the information for, I can then provide that information. What solves the problem of the dynamic is the patent also talks about when I register for the service, what happens is my computer is going to intermittently update the locator server. So it's just updating. It's updating. It's regularly updating. So if you haven't updated recently enough and there's been a change between your last update, there's been a change in the address, the dynamic address, then you misfire. What will happen is when the update comes, it will then, so the locator server will wait until the update comes and then make the connection. But that's it. I mean, it's just a question of updating. And you say Crichton doesn't have anything in it that suggests that this process can be done repetitively. And not just ISAIC. We have an expert opinion, we have an expert declaration in this patent, or in the re-examination describing this. So that's what happens in Crichton. Crichton appears to describe a system such as would be used between universities, where what happens is you create the communication channel between the two through some sort of manual initiation. There's no discussion whatsoever in Crichton about IP addresses. It's sort of presumed in there that there's some way of this thing happening that doesn't describe IP addresses. And there's this manual, again, manual connection that's made. It's a manual connection. There is no updating that's happening. So going back to, well, quickly round out the Crichton references. The decision by the board here on the Crichton references was a purely factual decision. Whether something is inherent is a question of fact by this court's rulings. Here the board found that the Crichton references do not disclose, by necessity disclose. And that's the issue here is Citrix argues, well, it could be either one. And that cuts against their inherent to the argument. If it could be either one, it's not by necessity dynamic IP addresses. And since it's not by necessity dynamic IP addresses, it's not inherent. And so with respect to the Crichton references, there was a factual determination by the board. The board has, you know, that decision was based on substantial evidence. There's more than substantial evidence supporting that in the record through declarations and otherwise. And so that should not be reversed in this appeal. Citrix also argues that the board exceeded its authority in reversing the board. That very issue was decided in the Tempo Lighting v. Tibly case at page 979. The exact same argument was made in that case that the party who was successful on all issues below, whether they could raise a different issue on appeal to the board, and this court has found that, yes, they can. As long as it's supported by the record. And this was an issue that was raised again and again below. In fact, actually, Citrix's argument that it did not have a full and fair opportunity to raise this issue is specious. They're the ones who raised the inherency argument to begin with in their response, their comments to the office action. I think it was the action opposing prosecution. That's where the examiner got the argument, raised the argument in the office action as a result of Citrix having raised the argument. The argument is raised in the appeal briefs. The argument is raised at the oral argument. They had more than sufficient opportunity to consider that issue or to argue that issue. And unless there's any other questions, I'll concede my last 20 seconds. Just a few points. Did you argue in your rebuttal brief that our log meeting decision was relevant to the net meeting reference or only to the pricing reference? The net meeting, I believe, Your Honor. Can you point to me in the record? This is where it is. Appendix 17796. Is that it? 17796? 17796, Your Honor. If I could, as my time ticks down, but if you had a question, Your Honor, I want to make sure I answer it. With respect to the dynamic IP addresses, the mistake the board made was the applicant's admission. The patentee admitted that IP addresses are ordinarily dynamic, that static IP addresses may only be obtained at a premium. When Crichton is silent as to IP addresses, the necessary inference is that it's talking about dynamic IP addresses. And the board certainly never accepted the argument from 01 that Crichton somehow wouldn't work with dynamic IP addresses. And I think it's a mistake, it's incorrect to say that Crichton does not address IP addresses at all. At the appendix, page 511, column 6, ground line 55 to 62 of the Crichton reference, and at the appendix, page 512, column 7, lines 58 through 63, it certainly addresses IP addresses. Can you give me those again? I'm sorry. Absolutely, Your Honor. Column 6, lines 55 through 62. That page was appendix 511? That's correct, Your Honor. All right. And appendix page 512, column 7, lines 58 through 63. Okay. Your Honor, if I may, there was some talk about validation, and you had asked me a question about validation earlier. That's column 7 of the 479 patent, which is page 493 of the appendix at around line 55. This is all it says about validation. It says, server computer 12 will validate the request to connect to private server 14 and initiate a search in the directory associated with the directory service program 28 to obtain the current internet protocol address of private server 14 and port number of message server 15 of private server 14 for the current communication session. That's all it says about validation, Your Honor. So I have to say, I can't say that I was correct when I said confirming that there was authorization as part of validation. The patent doesn't require that, and certainly the broadest reasonable interpretation. It shouldn't be read into that. There was a reference to how does the 479 patent solve the problem of dynamic IP addresses. That's exactly how ILS solves the problem of dynamic IP addresses. There's no difference between what the patent describes for how to deal with dynamic IP addresses and the whole point of integrating ILS, which is from the prior art, with NetMeeting in the prior art. The last point I would make, Your Honor, at page 648 of the appendix is part of the NetMeeting reference, choosing a user with a web directory. Every ILS server can also provide its directory listing as a web directory. Skip a sentence and it says, using this directory with a web browser may be an easy way for you to start up NetMeeting. When you select the link that points to a NetMeeting user, NetMeeting will automatically run on your machine and call that person. It solves exactly the same problem, Your Honor, of dynamic IP addresses. How does that, I didn't understand that to make a reference to updating. Is that just every time you turn on the machine? Every time you connect to the ILS server, it gets your then current IP address. It updates its own list of IP addresses? That's how the ILS server works, Your Honor. It keeps track of that information. Thank you. Thank you. We thank both counsels. The case is submitted and that concludes our proceedings.